IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN FOX, | ) | |
| on behalf of herself and a class, | ) | |
| Plaintiff, | ) | 09-cv-7111 |
| | ) | |
| vs. | ) | Judge Darrah |
| | ) | |
| NATIONWIDE CREDIT, INC. | ) | Magistrate Judge Mason |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS AND TO COMPEL ARBITRATION**

Plaintiff Susan Fox hereby responds in opposition to defendant Nationwide Credit, Inc.'s ("NCI") Motion to Dismiss and to Compel Arbitration [D.E. #18]. NCI's motion should be denied because (1) the claimed arbitration agreement between Ms. Fox and GE Money Bank ("the alleged arbitration provision") does not apply to the present litigation between Ms. Fox and NCI , and NCI is not a third-party beneficiary or otherwise entitled to enforce it, (2) there is no competent evidence that Ms. Fox is a party to the claimed agreement, and (3) the alleged arbitration provision provides for only the National Arbitration Forum ("NAF") or the American Arbitration Association ("AAA") to provide arbitration, neither of which are available to do so for the dispute raised in the present matter.

**I.    THE ALLEGED ARBITRATION PROVISION DOES NOT COVER NCI**

In its Memorandum, NCI argues that "the *only* issues to be decided by a court on a motion to compel arbitration pursuant to the FAA are '[1] whether the parties have a valid arbitration agreement at all or [2] whether a concededly binding arbitration clause applies to a

certain type of controversy.'" Def. Memo at 3 (emphasis original) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)). NCI's position cannot survive the first of these gateway questions, because the alleged arbitration provision clearly does not encompass third-party debt collectors who are independent contractors, as opposed to assignees, successors, or employees of GE Money Bank.

> A. **The alleged arbitration provision does not encompass NCI.**

NCI argues that the "arbitration provision states that all disputes that 'arise from' or relate to' plaintiff's 'credit card account [or] the relationships that result from [the] account' must be resolved by binding arbitration 'upon the election of either party[.]" Def. Memo at 2. NCI intentionally misrepresents the alleged arbitration provision. The full context of these phrases makes clear that the alleged arbitration provision does not apply to "all disputes," but rather to

> any dispute **between you and Us** that arises from or relates to your credit card account, the relationships that result from your account, this Agreement or any prior agreement or credit card account, including the enforceability or scope of this Provision.

Exhibit A (emphasis added) (Plaintiff has attached a more legible version of the arbitration agreement, reproduced verbatim from Exhibit B to NCI's Memorandum). As specified in the purported credit agreement (attached as Exhibit B to Exhibit 1 of NCI's Memorandum), "You" is defined as "all persons who are approved by us to use the Account," i.e. the consumer, while the "Us" is limited in the alleged arbitration provision to

> (1) GE Money Bank and all of its respective parents, wholly or majority owned subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors (collectively, the 'Bank') and (2) Lowe's Companies, Inc. and all of its respective parents, wholly or majority owned subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors (collectively, 'Lowe's'), if

Lowe's is named as a co-party with the Bank in a Claim asserted by you. Exhibit A. It is clear from the treatment of Lowe's that <u>not</u> everyone who may have something to do with the account is covered.

NCI does not, and cannot, argue that it fits within any of the above categories. Instead, it argues that the "arbitration provision explicitly allows for enforcement by a broad range of non-signatories– such as successors, employees, and assigns – authorized to act on GE Money Bank's behalf. Def. Memo at 4. Actually, it covers an explicit list of persons with certain relationshipts with GE Money Bank, but <u>not</u> third party independent contractor debt collectors. NCI is not a successor, an employee, or an assignee of GE Money Bank. NCI is a third-party independent contractor debt collector. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004).

The Supreme Court recently recognized that enforcing "the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion[.]' *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 2010 U.S. LEXIS 3672 (April 27, 2010) (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). The plain language of the alleged arbitration provision demonstrates clearly that Ms. Fox did not consent to arbitrate the present dispute with NCI. NCI's desire to coerce arbitration in this matter does not change the plain language of the alleged arbitration provision.

**B.      NCI is not entitled to enforce the alleged arbitration provision as a third-party beneficiary.**

NCI argues that "the plaintiff and GE Money Bank thus plainly intended to grant non-signatories like NCI the benefit of enforcing the arbitration provision" because the alleged

3

arbitration provision contains several categories of parties who are entitled to compel arbitration. Def. Memo at 7. On the contrary, the fact that the alleged arbitration provision explicitly provides which categories of non-signatories are entitled to compel arbitration, and did not include third-party independent contractor debt collectors demonstrates clearly that neither Ms. Fox nor GE Money Bank intended the present claim to be included in the alleged arbitration provision.

NCI's argument that the alleged arbitration provision "expressly grants the benefit of enforcing the provision to third parties like NCI who are charged with enforcing GE Money Bank's collection rights on its behalf" has no basis in the text of the alleged arbitration provision. The alleged arbitration provision <u>does not</u> include third party debt collectors who are not successors, employees, or assignees. NCI does not claim to have purchased either the debt or GE Money Bank's business, and a corporation cannot be an employee.

NCI's desire to be encompassed within the language of the alleged arbitration provision does not supercede its plain language, which plainly does not include NCI. Accordingly, the alleged arbitration provision should not be distorted to allow NCI to compel arbitration, because "Although the Federal Arbitration Act favors resolution of disputes through arbitration, its provisions are not to be construed so broadly as to include claims that were never intended for arbitration." *American United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003).

NCI's citation to *Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896 (2009) is also inapposite. (Def. Memo at 5). In *Arthur Andersen*, the Supreme Court held that a third-party beneficiary may compel arbitration under the Federal Arbitration Act "[i]f a written arbitration

4

provision is made enforceable against (or for the benefit of) a third party[.]" *Arthur Anderson*, 129 S. Ct. at 1902. In the present matter, the plain language of the alleged arbitration provision does not make third-party independent contractor debt collectors such as NCI intended beneficiaries. Accordingly, NCI cannot argue that the alleged arbitration provision is enforceable for its benefit.

      **C.**      **NCI is not entitled to enforce the alleged arbitration provision under equitable estoppel.**

NCI also argues that it is entitled to enforce the alleged arbitration provision under the principle of equitable estoppel because, it argues, Ms. Fox must rely on the terms of the written agreement in asserting her claim against NCI. Def. Memo at 5-6. On the contrary, nothing in Ms. Fox's claims against NCI in this matter depend whatsoever on the terms of her written agreement with GE Money Bank. Ms. Fox's FDCPA claims stem from voicemail messages left by NCI, not the terms of her contract with GE Money Bank. The terms and circumstances of the written agreement, and indeed what debt NCI was attempting to collect, are utterly immaterial to the present suit.

The present matter is very similar to *Masters v. Lowe's*, 2009 U.S. Dist. LEXIS 49505 (N.D. Ill. 2009), in which the court examined the same alleged arbitration provision at issue here. In *Masters*, the plaintiff alleged Lowe's violated the Fair and Accurate Transactions Act by providing her with a non-compliant receipt for her payment of the GE Money Bank account at its store. 2009 U.S. Dist. LEXIS 49505 at *1-2. Similarly to NCI in the present matter, the defendant in *Masters* argued that it was a third-party beneficiary to the agreement between the plaintiff and GE Money Bank, and that it could assert the arbitration agreement under the principle of equitable estoppel. However, just as in the present matter, the court found that the

plaintiff's "claim against [the defendant] does not refer to nor depend on her contractual rights." *Id.* at *11. The court reasoned that "[t]here is no inequity unless the plaintiff refuses to abide by the arbitration provisions of a contract while simultaneously insisting that the non-signatory defendant abide by the terms of the contract." *Id*. at *11-12. Just as in *Masters*, there is no inequity in the present matter, because Ms. Fox is not asserting any of the credit agreement's terms in her claim against NCI.

NCI relies upon *Hoffman v. Deloitte & Touche, LLP*, 143 F.Supp. 2d 995 (N.D. Ill. 2001) and *Tickanen v. Harris & Harris*, 461 F. Fupp. 2d 863 (E.D. Wis. 2006) for its argument on this point, but these cases are readily distinguishable from the present matter. In *Hoffman*, the court examined plaintiffs' claims that they had been fraudulently induced to enter into contracts to sell their companies. 143 F.Supp. 2d at 997. The court found that the arbitration provision at issue could be enforced by the non-signatories who are the now employees of a party who fraudulently induced the contract that contained the clause because "the sum and substance of the allegations against [the defendants] are that they fraudulently induced plaintiffs to enter into the contracts containing the arbitration clauses. As such...plaintiffs' principal claims against these defendants are not based on subsequent independent acts..." *Id*. at 1004 (quotation omitted). In the present matter, the sum and substance of plaintiff's claims against NCI are <u>all</u> based on subsequent independent acts, and do not rely upon the written instrument.

In *Tickanen*, the plaintiffs asserted FDCPA claims against defendant, who was the assignee of plaintiffs' accounts from HSBC, who was in turn the assignee of the original creditor. After finding that there was a valid arbitration agreement between plaintiffs and HSBC, the court ruled that the defendant could compel arbitration because it was the assignee of HSBC,

6

and stood in its shoes. In addition, plaintiffs' claims relied upon the terms of the written agreement containing the arbitration agreement.

In contrast, NCI is <u>not</u> GE Money Bank's assignee, the present matter does not hinge on the status or terms of the written agreement between Ms. Fox and GE Money Bank, and the language of the alleged arbitration provision does not include third-party independent contractor debt collectors.

Indeed NCI points to <u>no</u> action or representation by Ms. Fox that could possibly give rise to estoppel. She does not rely on the terms of any agreement, and she has made no representation regarding its terms.

### III.  NCI HAS NOT DEMONSTRATED THAT MS. FOX WAS A PARTY TO THE ORIGINAL CREDIT AGREEMENT

NCI attaches as <u>Exhibit 2</u> to its Memorandum the declaration of Martha A. Koehler, an employee of a a wholly owned subsidiary of GE Money Bank. Ms. Koehler states in her declaration that "At the time that Susan Fox opened her Lowe's Account, she was issued a credit card agreement governing the relationship between Ms. Fox and Monogram with respect to her Lowe's Account." However, NCI attaches no proof of how Ms. Fox opened her credit account, or how she received the purported credit card agreement. NCI has provided no competent evidence, no documentation or witnesses, demonstrating that the purported credit agreement was given to Ms. Fox in person, or sent to her. Accordingly, NCI has not demonstrated that Ms. Fox was a party to the original purported credit agreement.

### IV.  NEITHER OF THE ALLEGED ARBITRATION PROVISION'S SELECTED ARBITERS IS AVAILABLE TO ARBITRATE PLAINTIFF'S DISPUTES

Even if the arbitration agreement between Ms. Fox and GE Money Bank encompassed

the dispute between Ms. Fox and NCI, the alleged arbitration provision would still be unenforceable because neither of its selected arbiters is available to hear the dispute. The alleged arbitration provision provides only for NAF or AAA to serve as the arbiter of any dispute between the parties, and provides no allowance for the selection of an alternate arbiter.

### A.  The NAF is barred from accepting the dispute.

In July 2009, Minnesota sued the NAF for conducting fraudulent arbitrations. The NAF handled disputes for a law firm with common ownership, while concealing its financial interest and holding itself out as a neutral arbitrator. See Exhibit B (complaint in *Minnesota v. National Arb. Forum Inc.*, No. 27-CV-09-18550 (Hennepin Co. (Minn.) Dist. Ct.). The state alleged that the NAF "works alongside creditors behind the scenes – against the interests of consumers" in order to obtain business from those creditors, through pre-dispute mandatory arbitration clauses in form contracts. *Id.*, ¶1. See *id.*, ¶¶19-25 (NAF misrepresentations of impartiality), and *id.*, ¶¶86-112 (NAF's collusion with creditors who were solicited by NAF). The NAF openly advertised itself as a home-court for creditors – telling creditors, for example, that "the customer does not know what to expect from arbitration and is more willing to pay," that consumers "ask you to explain what arbitration is then basically hand you the money," and that creditors "have all the leverage [in arbitration] and the customer really has no choice but to take care of the account." *Id.*, ¶¶4, 91-112. In July 2009, a subcommittee of the House Oversight Committee issued a report, stating that consumers in NAF arbitrations were virtually assured of failure, and that whatever rules and standards were in place at the NAF were not fairly enforced – to the end

8

of generally ensuring an award in favor of the creditor. Exhibit C[1]

Shortly after Minnesota filed suit, the NAF entered into a settlement, under which it is barred from engaging in "any arbitration involving a dispute between a business entity and a private individual which relates to goods, services or property of any kind allegedly provided by any business entity to the individual, or payment for such goods, services or property," resulting in "the complete divestiture by the NAF Entities of any business related to the arbitration of consumer disputes." Exhibit D, ¶¶1-3. Thus, the NAF is unavailable. And as the AAA are unavailable, as explained below, arbitration is impossible.

**B.    The AAA will not handle the dispute.**

At the same time as the NAF's departure from consumer arbitration, the AAA imposed a moratorium on handling such disputes:

> **Matters included in this moratorium are: consumer debt collections programs or bulk filings and individual case filings in which the company is the filing party and the consumer has not agreed to arbitrate at the time of the dispute and the case involves a credit card bill or, the case involves a telecom bill or the case involves a consumer finance matter.**
>
> The AAA will continue to administer all demands for arbitration filed by consumers against businesses, and all other types of consumer arbitrations.
>
> This policy will be in effect until such time as the AAA determines that adequate and broadly acceptable due process protocols specific to these cases are in place. It is our intention to engage in earnest dialogue with a diversity of interest groups on what constitutes a proper protocol framework for these matters. For more detailed information about the AAA's position on debt collection arbitration please see [the AAA's website].
>
> The AAA would emphasize that this policy decision was carefully considered and made solely by the AAA after determining that while the Consumer Due Process Protocol works very well for most consumer arbitrations, the categories of arbitrations listed

---

[1] Accessed at http://oversight.house.gov/images/stories/documents/20090722134925.pdf (as of May 28, 2010).

above appear to require additional protections due to, among other things, a high rate of non-participation by the consumers. [Exhibit E (emphasis added).][2]

Plaintiffs' claims squarely fit within the moratorium's scope. The moratorium's express terms include not only debt collection claims, but any claim where the matter involves a credit card or a consumer finance matter. As these requirements are met, the AAA moratorium applies.

## V. CONCLUSION

Because the alleged arbitration provision does not encompass NCI as a third-party independent contractor, NCI cannot compel arbitration under its terms. Neither can NCI compel arbitration under equitable estoppel, because Ms. Fox's FDCPA claims against NCI are completely independent of the written agreement between Ms. Fox and GE Money Bank. Additionally, NCI has offered no competent evidence that Ms. Fox was a party to the original purported credit agreement. Finally, the alleged arbitration provision is unenforceable because neither of its chosen arbiters can hear the dispute, and the alleged arbitration provision provides no mechanism for the selection of an alternate arbiter.

Respectfully submitted,

s/Zachary A. Jacobs
Zachary A. Jacobs

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Zachary A. Jacobs
EDELMAN, COMBS, LATTURNER
     & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor

---

[2] Accessed at http://www.adr.org/sp.asp?id=36427 (as of May 28, 2010).

Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## **CERTIFICATE OF SERVICE**

        I, Zachary A. Jacobs, hereby certify that on June 1, 2010, I had the foregoing document filed via the CM/ECF System, which sent notification of such filing to the following parties:

Alfred M. Swanson, Jr.      (amswanson@greeneandletts.com)

                                  s/Zachary A. Jacobs
                                  Zachary A. Jacobs